## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**KEAN FOR CONGRESS COMMITTEE**

**Plaintiff,**

**v.**                                        Civil Action No.  04-0007 (JDB)

**FEDERAL ELECTION COMMISSION**

**Defendant.**

## MEMORANDUM OPINION

Plaintiff Kean for Congress Committee ("plaintiff" or "Kean Committee") brings this action against defendant Federal Election Commission ("defendant" or "FEC") seeking judicial review of the dismissal by FEC of an administrative complaint filed by Kean Committee.  See Am. Compl. ¶ 1.  Kean Committee's administrative complaint concerned political advertisements made against Thomas H. Kean, Jr., a candidate in 2000 for the New Jersey Seventh Congressional District.  See id. ¶ 2.  Currently before the Court is defendant's motion to dismiss or, in the alternative, for summary judgment on the ground that plaintiff Kean Committee lacks standing to challenge the FEC's decision to dismiss Kean Committee's administrative complaint.

## BACKGROUND

The facts in this Background Section are drawn from plaintiff's Amended Complaint, the record before the Court on defendant's motion, and those portions of defendant's Statement of Material Facts As To Which There Is No Genuine Issue ("Pl. Response to Def. Statement") that

are uncontradicted and well supported by the record.  Because defendant's motion to dismiss challenges the jurisdiction of this Court to hear plaintiff's action, the Court is permitted to examine materials outside the pleadings as it deems appropriate.  See Herbert v. Nat'l Acad. Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

## A.      Federal Election Campaign Act of 1971

The Federal Election Campaign Act of 1971, as amended ("the Act" or"FECA"), codified at 2 U.S.C. §§ 431-455, was designed to remedy any actual or perceived corruption within the political process.[1]  See FEC v. Akins, 524 U.S. 11, 14 (1998).  The FECA accomplishes this goal, in part, by imposing limits upon the amounts that individuals, corporations, "political committees" and political parties can contribute to federal candidates.  See 2 U.S.C. §§ 441a(a), 441a(b), 441b. The act also prohibits contributions or expenditures by corporations in federal elections.  See 2 U.S.C. § 441b(a).

In addition to the contribution restrictions and limitations, the FECA also imposes extensive record keeping and disclosure requirements upon a variety of actors in the political process, including requirements upon groups that fall within the definition of "political committees." 2 U.S.C. §§ 432-434.  Under FECA, "political committees" is broadly defined as "any committee, club, association or other group of persons which receives" more than $1000 in

---

[1]  On May 27, 2002 the Bipartisan Campaign Reform Act ("BCRA") was signed into law. The BCRA contains many substantial changes to the campaign finance law, such as increasing the individual contribution limit to $2,000, see 2 U.S.C. § 441a(a)(1).  However, the Kean Committee filed its administrative complaint well before the passage of the BCRA, and therefore any changes in the law from the BCRA are irrelevant to this Court's review of plaintiff's Complaint and defendant's motion to dismiss.

"contributions" or which makes over $1,000 in "expenditures" in any given year.  <u>See</u> 2 U.S.C. §

431(4)(A).  Political committees are required to register with the FEC, appoint a treasurer,

maintain names and addresses of contributors, track expenditures and file FEC reports that list

donors giving more than $200 per year, contributions, expenditures, and any other disbursements

regardless of purpose.  <u>See</u> 2 U.S.C. §§ 432-434.

**B.**      **FEC Complaint Process**

The FECA also provides the FEC, an independent agency of the United States

government, with exclusive jurisdiction over enforcing its provisions.  <u>See</u> 2 U.S.C. §§

437c(b)(1), 437d(e) and 437g.  The FEC is authorized to institute investigations of possible

violations of FECA.  2 U.S.C. §§ 427g(a)(1) and (2).  The FECA also permits "any person" to file

a signed, sworn administrative complaint with the FEC alleging a violation of FECA, <u>see</u> 2 U.S.C.

§ 437g(a)(1), and proscribes certain steps that must be taken in processing an administrative

complaint.

The FEC first reviews the complaint and any responses to it.  Then, usually following a

recommendation from the General Counsel of the FEC, the Commission votes whether there is

"reason to believe" that a violation of FECA has occurred.  <u>See</u> 2 U.S.C. § 437g(a)(2).  If four of

the six members of the Commission vote to find a "reason to believe," then the FEC will conduct

an investigation.  <u>Id.</u>  After the investigation is completed, the six members of the Commission

again vote, but this time to determine whether there is "probable cause" to believe a violation of

FECA has occurred.  <u>See</u> 2 U.S.C. § 437g(a)(4)(A)(I).  Again, if at least four of the six members

vote to find probable cause, the FEC will attempt to reach a conciliation agreement with the

alleged violator.  Id.  If no conciliation agreement can be reached, the six member Commission

can vote to institute a de novo civil enforcement action.  See 2 U.S.C. § 437g(a)(6)(A).

If, during any of the numerous votes by the six member Commission, less than four

members vote affirmatively in favor of taking action upon the complaint, then the complaint is

dismissed.  A complainant whose complaint fails to pass this gauntlet of Commission votes may

then file a petition for review in the United States District Court for the District of Columbia.  See

2 U.S.C. § 437g(a)(8)(A).

**C.**     **Kean Committee**

In December 1999, the Kean Committee was designated by Thomas H. Kean, Jr., as his

principal campaign committee for the 2000 election for the United States House of

Representatives from New Jersey's Seventh Congressional District.  See Def. Statement ¶ 1.  In

the same month, the Kean Committee registered with the FEC as Mr. Kean's principal campaign

committee, and was given an FEC identification number.  Id. ¶ 2.

In or around May 2000, the Council for Responsible Government ("CRG") began running

advertisements against Mr. Kean.  See Am. Compl. ¶ 13.  In one advertisement of two pages, the

following statement was superimposed against a photograph of Mr. Kean:

**TOM KEAN, JR.**
No experience.  Hasn't lived in New Jersey for 10 years.
It takes more than a name to get things done.

Id. ¶ 14.  The second page of the advertisement included the following statement:

NEVER.  Never worked in New Jersey.  Never ran for office.  Never held a job in
the private sector.  Never paid New Jersey property taxes.  Tom Kean Jr. may be a
nice young man and you may have liked his dad a lot - but he needs more
experience dealing with local issues and concerns.  For the last 5 years he has lived

in Boston while attending college.  Before that, he lived in Washington.  New
Jersey faces some tough issues.  We can't afford on-the-job training.  Tell Tom
Kean Jr. . . . **New Jersey needs New Jersey leaders.**

Id.

The second advertisement run by the CRG against Mr. Kean contained a similar statement.

Id. ¶ 15.  It also included the following photographs: former basketball player Larry Bird, Senator

Ted Kennedy, a statue of a Revolutionary War "Minuteman" and Mr. Kean.  Id.  Before those

photographs was the following statement, "What do all these things have in common?  They all

have homes in Massachusetts."  Id.

According to a May 24, 2000 newspaper story, Gary Glenn is identified as a CRG board

member.  Id. ¶ 13.  Mr. Glenn is quoted as saying that "[t]he very purpose of our group is to

influence the outcome of elections . . . .  Clearly, we believe Mr. Ferguson is a candidate whose

record and philosophy is consistent with our philosophy."  Id.

On June 6, 2000 Mr. Kean lost the Republican primary for the New Jersey Seventh

Congressional District to Mike Ferguson by less than 3,400 votes.  Id. ¶ 16.

**D.      Kean Committee Administrative Complaint**

Soon after the news article and prior to the primary election, on May 31, 2000, the Kean

Committee filed a sworn administrative complaint with the FEC, pursuant to 2 U.S.C. § 437g(a).

Id. ¶ 17.  The FEC designated the Kean Committee complaint as matter under review ("MUR")

5024.  The Kean Committee alleged that CRG had violated the following FECA provisions:

prohibition on corporate contributions and expenditures (2 U.S.C. § 441b(a)); requirement of

public disclosure of independent expenditures in support of or against a federal candidate (2

U.S.C. § 434(c)); requirement to register with FEC as a political committee and disclose

contributions and expenditures (2 U.S.C. §§ 431(4)(a), 433, 434); and requirement that

communications advocating defeat of a clearly identified candidate include a disclaimer as to

whether the communication was authorized by any candidate (2 U.S.C. §§ 431(4)(a), 433, 434,

441d(a); 11 C.F.R. § 110.1(a)(1)).  Id. ¶ 18

The FEC failed to act on Kean Committee's administrative complaint for more than 120

days. Id.  Therefore, as an aggrieved party, Kean Commission challenged the FEC's inaction

pursuant to 2 U.S.C. § 437(g)(1), by filing a complaint with this Court on September 18, 2001.  Id.

¶ 23.  Thereafter, upon consultation with the FEC, Kean Commission voluntarily withdrew its

complaint on February 4, 2002.  Id.

On September 3, 2003, General Counsel within the FEC issued the  First General

Counsel's Report ("GC Report").  Id. ¶ 25.  The GC Report reached the following conclusions

concerning Kean Committee's administrative complaint:  (1) CRG had violated 2 U.S.C. §§ 434,

441b(a), and 441d(a); (2) two members of CRG's Board, Bill Wilson and Gary Glenn, had

violated 2 U.S.C. § 441b(a); and (3) a document subpoena should be issued to CRG, along with

deposition subpoenas for CRG Board members.  Id. ¶ 26.

By letter dated November 10, 2003, the FEC advised Kean Committee that the

Commission was "equally divided" on whether there was reason to believe CRG had violated

FECA, and therefore the FEC closed Kean Committee's administrative complaint on November 4,

2003.  Id. ¶ 24.  On January 5, 2004, Kean Committee filed this action, having not received from

the FEC the required Statement of Reason ("SOR").  Id.  Then on or around January 16, 2004, the

FEC released its SOR reflecting the 3-3 split within the six member Commission and hence

finding no reason to believe a violation of FECA occurred and rejecting the finding of the GC

Report.  Id. ¶ 25.

## **LEGAL STANDARD**

Summary judgment is appropriate when the pleadings and the evidence demonstrate that

"there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law."  Fed.R.Civ.P. 56(c).  The party seeking summary judgment bears the initial

responsibility of demonstrating the absence of a genuine dispute of material fact.  See Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion

by "informing the district court of the basis for its motion, and identifying those portions of 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

Id. (quoting Fed.R.Civ.P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude

summary judgment, the court must regard the non-movant's statements as true and accept all

evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere

existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to the

absence of evidence proffered by the non-moving party, a moving party may succeed on summary

judgment.  Celotex, 477 U.S. at 322.  "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations

omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.

On a motion to dismiss of for summary judgment based on lack of jurisdiction, the plaintiff bears the burden of establishing the jurisdiction of the Court.  See Dist. of Columbia Ret. Bd. v. United States, 657 F. Supp. 428, 431 (D.D.C. 1987); Gordon v. Ashcroft, 283 F. Supp. 2d 435, 437 (D. Mass. 2003).  Where, as here, the defendants challenge the legal sufficiency of the plaintiff's jurisdictional allegations, the district court should take the plaintiff's factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  See Hawk v. Olson, 326 U.S. 271, 272 (1945); Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 39 (D.C. Cir. 2000).  The court need not limit itself to the allegations of the complaint.  See Hohri v. United States, 782 F.2d 227, 241 (D.C. Cir. 1986), vacated on other grounds, 482 U.S. 64 (1987).  Instead, the court may consider any materials outside the pleadings as it deems appropriate to determine whether it has jurisdiction over the case.  See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 (D.C. Cir. 1997); Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

"For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  Warth v. Seldin, 422 U.S. 490, 501 (1975); accord Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987).  A motion to dismiss or for summary judgment for lack of subject matter jurisdiction should not prevail "unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief."  Kowal v. MCI

Commun. Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); Beverly Enters., Inc. v. Herman, 50 F.

Supp. 2d 7, 11 (D.D.C. 1999).  At this juncture, plaintiff enjoys all favorable inferences that can

be drawn from the alleged facts.  See St. Francis Xavier Parochial Sch., 117 F.3d at 624.  That

notwithstanding, the Court has an "affirmative obligation to ensure that it is acting within the

scope of its jurisdictional authority," and plaintiff bears the burden of pleading a claim within the

Court's subject matter jurisdiction.  Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F.

Supp. 9, 13 (D.D.C. 2001); see also Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp.

2d 15, 18 (D.D.C. 1998).

## ANALYSIS

Defendant has filed a motion to dismiss or, in the alternative, for summary judgment, on

the ground that plaintiff lacks standing to bring this action.  Kean Committee brings this action

under 2 U.S.C. § 437g(8)(a) for judicial review of the FEC's dismissal of its administrative

complaint.  Section 437g(8)(a), which permits "[a]ny party aggrieved by an order of the

Commission ...[to] file a petition," does not automatically confer standing.  Kean Committee

contends that it has suffered both an informational and competitive injury from the FEC's

dismissal of its administrative complaint, and therefore it has standing to bring this action to

review the FEC's decision.

The standing doctrine arises out of the "bedrock requirement" that courts hear only "cases

and controversies."  See Valley Forge Christian Coll. v. Ams. United for Separation of Church &

State, Inc., 454 U.S. 464, 471 (1982).  As the Supreme Court has explained, "[t]he federal courts

are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the

most important of the jurisdictional doctrines.'" <u>FW/PBS, Inc. v. City of Dallas</u>, 493 U.S. 215,

230 (1990) (quoting <u>Allen v. Wright</u>, 468 U.S. 737, 750 (1984)).[2]  Therefore, this Court must

evaluate plaintiff's standing before the Court can proceed to the merits of plaintiff's Amended

Complaint.

Article III of the Constitution restricts the jurisdiction of the federal courts to "Cases" and

"Controversies."  U.S. Const., art. III, § 2; <u>Flast v. Cohen</u>, 392 U.S. 83, 94 (1968); <u>Allen</u>, 468 U.S.

at 750.  This requirement has given rise to "several doctrines . . . 'founded in concern about the

proper — and properly limited — role of the courts in a democratic society.'" <u>Allen</u>, 468 U.S. at

750 (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975)); <u>Valley Forge</u>, 454 U.S. at 471.  One

aspect of this "case-or-controversy" requirement is that plaintiffs must have standing to sue, an

inquiry that focuses on whether the plaintiff is the proper party to bring suit.  <u>FW/PBS, Inc.</u>, 493

U.S. at 231.  Hence, "'the question of standing is whether the litigant is entitled to have the court

decide the merits of the dispute or of particular issues.'" <u>Allen</u>, 468 U.S. at 750-51 (quoting

<u>Warth</u>, 422 U.S. at 498).

Standing focuses on the particular injury allegedly suffered by the plaintiff, and involves a

three-part judicial inquiry:

> First, the plaintiff must have suffered an injury in fact — an invasion of a legally
> protected interest which is (a) concrete and particularized, and (b) actual or
> imminent, not conjectural or hypothetical.  Second, there must be a causal

---

[2]  Standing must be determined as a threshold jurisdictional matter.  <u>See</u> <u>Whitman v.
Arkansas</u>, 495 U.S. 149, 155 (1990); <u>see also</u> <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83,
101-02 (1998); <u>Campbell v. Clinton</u>, 203 F.3d 19, 20 (D.C. Cir. 2000) ("Since we agree with the
district court that the congressmen lack standing, it is not necessary to decide whether there are
other jurisdictional defects.").

connection between the injury and the conduct complained of — the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal citations and quotation

marks omitted).  "These requirements together constitute the 'irreducible constitutional minimum'

of standing, which is an 'essential and unchanging part' of Article III's case-or-controversy

requirement, and a key factor in dividing the power of government between the courts and the two

political branches."  Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S.

765, 771 (2000) (internal citations omitted) (quoting Lujan, 504 U.S. at 559-60).  Here, the

standing analysis is informed by the Supreme Court's prior examination of standing in a case

brought pursuant to FECA.

A.      **Akins v. FEC**

Plaintiff's principal argument in favor of standing is that it has suffered an informational

injury[3] similar to the injury suffered by the plaintiffs in FEC v. Akins, 524 U.S. 11 (1998), which

satisfies the injury-in-fact requirement of Article III standing.  See Pl. Opp'n at 12.  Specifically,

the argument is that FEC's dismissal of Kean Committee's administrative complaint denied Kean

Committee information regarding the CRG that Kean Committee contends it has a right to receive

under FECA.  If the injury-in-fact requirement is satisfied, the remaining elements of Article III

standing – causality and redressability – naturally follow because the action by FEC has plainly

---

[3]  Plaintiff also argues that it has suffered a competitive injury.  See Pl. Opp'n at 20 n.6. However, because this Court finds standing based on plaintiff's alleged informational injury, there is no need to address plaintiff's competitive injury argument.

-11-

denied Kean Committee the requested information and this Court could order the disclosure of that information.  Given plaintiff's reliance upon Akins, this Court's analysis of plaintiff's standing must begin there.

In Akins the plaintiffs challenged the FEC's decision that the American Israel Public Affairs Committee ("AIPAC") was not a "political committee" and therefore was not required to disclose its contributions and expenditures.  See Akins, 524 U.S. at 15-16.  The FEC's General Counsel had found that AIPAC had made expenditures that were campaign related and amounted to advocating the election or defeat of particular candidates.  See id. at 17.  The FEC, however, concluded that AIPAC was not subject to the disclosure requirements.  Id. at 18.  When the plaintiffs -- a group of voters with views often opposed to AIPAC -- challenged the FEC's dismissal of their complaint in federal court, the FEC argued that they did not have standing to bring the action.  Id. at 19.

The Supreme Court disagreed, finding that the plaintiffs had established both prudential and constitutional standing to challenge the actions of the FEC.  Id. at 26.  In the constitutional standing analysis, the Court found that the "injury-in-fact" suffered by the plaintiffs was their "inability to obtain information – lists of AIPAC donors ... and campaign related contributions and expenditures – that, on respondents' view of the law, the statute requires that AIPAC make public."  Id. at 21; see also Public Citizen v. Dep't of Justice, 491 U.S. 440, 449 (1989) (finding an injury-in-fact when plaintiff was denied information that should have been disclosed by statute).  The Court went on to say that "[t]here is no reason to doubt [plaintiffs'] claim that the information would help them (and others to whom they would communicate it) . . . ."  Id.

-12-

In differentiating the plaintiffs' complaint from other requests for information, the Court was careful to note that in <u>Akins</u> there was a statute that directed the release of the requested information, which plaintiffs argued had been unlawfully denied to them.  <u>Id.</u> at 22.  The Court added that the statute (2 U.S.C. §§ 432-434) was designed "to protect respondents from the kind of harm they say they have suffered, i.e., failing to receive particular information about campaign-related activities."  <u>Id.</u>  This statutory directive, the Court said, was in sharp contrast with cases such as <u>United States v. Richardson</u>, 418 U.S. 166 (1974), where a plaintiff sought information that by statute the CIA was permitted to keep secret and hence was attempting to enforce "general directives" of the legislature.  <u>Akins</u>, 524 U.S. at 21-22.  Furthermore, the Court noted that the decision in <u>Richardson</u> involved taxpayer, not voter standing, although observing that the result would not necessarily have changed if voter standing had been asserted.  <u>Id.</u> at 22.

**B.     Application of <u>Akins</u>**

In several ways, the instant case seems on all fours with the Supreme Court's analysis in <u>Akins</u>.  To begin with, Kean Committee is in the same posture as the plaintiffs in <u>Akins</u>, having filed an administrative complaint against the CRG before the FEC alleging, <u>inter alia</u>, that CRG failed to report its contributions and expenditures as required of a political committee under FEC regulations.  Kean Committee has based its claim for that information on 2 U.S.C. §§ 431(4)(a), 433, 434, the same provisions relied upon by the plaintiffs in <u>Akins</u>.  <u>See Akins</u>, 524 U.S. at 15.  In <u>Akins</u> the plaintiffs' injury-in-fact resulted from their "inability to obtain information" believed due under FECA.  <u>Id.</u> 21.  Kean Committee has suffered the same alleged injury-in-fact through its failure to receive information concerning CRG's contributions and expenditures.

As the Supreme Court explained "[t]here is no reason to doubt [plaintiffs'] claim that the

information would help them (and others to whom they would communicate it) . . . ." Id. at 21; see

Ethyl Corp v. EPA, 306 F.3d 1144, 1148 (D.C. Cir 2002) (considering both the statutory grant of

right to requested information and whether "there is no reason to doubt" the usefulness of the

information to plaintiff).[4]  This additional inquiry as part of the injury-in-fact analysis under Akins

is not overly burdensome.  The Supreme Court, and subsequent D.C. Circuit decisions, in making

this additional inquiry into informational injury, have not directed district courts to conduct an

exhaustive consideration of the possible uses of the requested information and an examination of

support in the record for those asserted uses.  Instead, the question is simply whether "there is no

reason to doubt" the asserted justification.  Akins, 524 U.S. at 21.  In Akins, the Supreme Court

concluded that voters from a past election could use the information about AIPAC contributors

and expenditures to evaluate candidates for office -- and went no further than that.  Id.

Here, the Kean Committee has alleged in its Amended Complaint that the disclosures

would "assist the Kean Committee in determining whether the CRG is an organization that enjoys

wide support by multiple donors or relatively few . . . .  The disclosures will reveal whether CRG's

support comes primarily from in-state or out-of-state contributors/voters."  Am. Compl. ¶ 22.

Kean Committee has further argued that this information would aid it in assessing whether Mr.

Kean would be a viable federal candidate in the future, which is implicit within the reasons

---

[4]  The FEC makes the curious argument that the information pertaining to CRG's
contributions and expenditures is already known because CRG is required to file with the IRS as a
section 527 organization.  See Def. Supp. at 5 n.4.  But certainly the FEC disclosure requirements
are significantly different in specificity from the IRS regulations.  Compare Def. Supp. Ex.'s 5-7
with 2 U.S.C. §§ 431(4)(a), 433, and 434.

alleged in the Amended Complaint.  See Pl. Opp'n at 16, citing Am. Compl ¶ 21-22.

The Supreme Court in Atkins did not ask whether the requested information would be used in a manner envisioned by the statute.  Instead, the inquiry was whether the plaintiffs had alleged a statutory right to the information, and whether the information "would help them." Akins, 524 U.S. at 21.  Applying that test here, Kean Committee has alleged a statutory right to information under FECA and has alleged how the information would be helpful to it.  Under Atkins, that would appear to satisfy the injury-in-fact element of Article III standing.

**C.      FEC's Arguments Against Standing**

Defendant makes four principal arguments against the application of Akins and finding standing in this case.  First, the FEC argues that the Kean Committee has failed to allege with sufficient specificity whether Mr. Kean will run again in a federal election, and therefore cannot establish that the alleged injury is "actual or imminent."  See Lujan, 504 U.S. at 560.  Second, the FEC contends that Akins was limited to voters, and therefore is not applicable in the context of candidate committees, especially in assessing whether the requested information would be helpful. Third, the FEC alleges that the Kean Committee, which exists only as the principal candidate committee for Mr. Kean's 2000 election, cannot establish the future injury necessary to sustain standing for a claim seeking injunctive relief.  Finally, the FEC argues that the Kean Committee has failed to establish standing as of the time of its Amended Complaint because the proffered justifications are merely ex post rationalizations not supported by the record.  The Court concludes that the FEC's arguments are insufficient to cast doubt on plaintiff's standing to bring this suit.

i.     Likelihood of Another Kean Candidacy

Defendant first argues that a future Kean candidacy is too speculative to satisfy the injury-in-fact requirement for Article III standing.  See Def. Reply at 1.  According to the FEC, Kean Committee has not put forth any evidence that would show Mr. Kean to be politically active in any way.  Id. at 4.  The FEC analogizes Kean Committee's assertion that Mr. Kean is a "potential candidate in the future" to that of the plaintiffs in Lujan who asserted that they may some day take a trip.  Id. at 6.  Furthermore, the FEC cites to Animal Legal Defense Fund v. Espy, 23 F.3d 496 (D.C. Cir. 1994), Renne v. Geary, 501 U.S. 312 (1991), Golden v. Zwickler, 394 U.S. 103 (1969), and McConnell v. FEC, 124 S.Ct. 619 (2004), to support its argument that Kean Committee has taken a "radical position" in advocating standing based upon the disclosure requirements of FECA.  See Def. Reply at 6-8.

However, the FEC misconstrues the holding of Akins.  There the injury-in-fact was the failure to obtain information that, by statute, the plaintiffs had a right to have.  The Court in Akins did not require the plaintiffs to establish a statutory right to information and then further establish an additional concrete and immediate harm.  The injury was, as it is in this case, the denial of information that FECA directed must be disclosed.  The FEC's argument that plaintiff needs an additional injury, beyond a statutory right to information, to establish standing would completely eviscerate Akins.  The decision in Akins was not a "radical position," as FEC would characterize plaintiff's articulation of the Akins holding, but rather was consistent with the Supreme Court's standing jurisprudence leaving it to Congress to create statutory rights or entitlements whose deprivation constitutes an injury for purposes of standing analysis.  See Warth, 422 U.S. at 514

-16-

("Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of the statute.").

The four cases cited by the FEC are unhelpful.  In each, the plaintiffs who were denied standing did not allege an injury akin to that in <u>Akins</u> or the instant case.  In <u>Animal Legal Defense Fund</u>, the plaintiff was a former researcher challenging regulations that might not apply to her in the future.  23 F.3d at 499-500.  Similarly, in <u>Renne</u>, <u>Golden</u>, and <u>McConnell</u> the plaintiffs challenged regulations that had not yet been enforced against them -- nor was it evident the regulations would ever be enforced against them.  <u>See Renne</u>, 501 U.S. at 321-22; <u>Golden</u>, 394 U.S. at 109; <u>McConnell</u>, 124 S.Ct. at 708.

The injury alleged by Kean Committee is neither speculative nor conjectural.  It was suffered when the FEC denied Kean Committee the information that by statute allegedly should have been disclosed.  Although Kean Committee is seeking future relief, it is not speculative as to whether they would request the information -- they have already done so.  <u>See</u> Am. Compl. ¶ 1.  This is in sharp contrast to the cases cited by the FEC, where there was a distinct disconnect between the position of the plaintiffs and the challenged regulations.  In the instant case, Congress specifically created a right to this information when it enacted the FECA disclosure requirements.  Congress has the ability to create statutory rights and entitlements, the deprivation of which can establish Article III standing.  <u>See Warth</u>, 422 U.S. at 514.

Not to be denied, the FEC has supplied the Court with two dozen cases where it was a party and the plaintiffs were denied standing.  <u>See</u> Def. Notice of Authority.  However, not one of

the cases cited by the FEC involved a plaintiff who alleged a right to information based upon a statute, like the plaintiffs in <u>Akins</u> and Kean Committee.  Instead, the FEC has cited cases where courts have denied standing because the plaintiffs were not seeking information to which they had a statutory claim, but rather simply looking for information they wanted.  <u>See</u>, <u>e.g.</u>, <u>Judicial Watch, Inc. v. FEC</u>, 180 F.3d 277 (D.C. Cir. 1999) (plaintiff's complaint only sought information about whether a violation of FECA occurred, which is insufficient to establish injury-in-fact); <u>Gottlieb v. FEC</u>, 143 F.3d 618 (D.C. Cir. 1998) (no standing in complaint over possible illegal transfer of funds from a primary to general election fund); <u>Common Cause v. FEC</u>, 108 F.3d 413 (D.C. Cir. 1998)(no standing to determine whether a candidate violated the contribution limitation laws).

In effect, the FEC would turn the "no reason to doubt the information would be useful" language in <u>Akins</u> into the core component of the information injury inquiry.  By arguing the speculative nature of a future federal campaign by Mr. Kean, the FEC is really arguing that Kean Committee has no use for the requested information.  To be sure, the speculative nature of Mr. Kean's future may enter into the injury-in-fact analysis under <u>Akins</u>.  The question though, as posed by the Supreme Court, is whether there "is no reason to doubt their claim that the information would help them (and others to whom they would communicate it) . . . ."  <u>Akins</u>, 524 U.S. at 21.  The FEC has presented nothing that would permit this Court to question the claims of Kean Committee that the information would aid them in assessing the support for CRG and the impact on any future campaigns of Mr. Kean.  Certainly this Court is ill-equipped to assess the political landscape of New Jersey and conduct a searching inquiry into Mr. Kean's potential

political future.  See Becker v. FEC, 230 F.3d 381, 387 (1st Cir. 2000) ("To probe any further into these situations [politician's strategies] would require the clairvoyance of campaign consultants or political pundits -- guises that members of the apolitical branch should be especially hesitant to assume.").  Were Mr. Kean to sign an affidavit stating that he would never run again, this Court would have reason to doubt Kean Committee's claims for the information.  However, the affidavits of the former Kean Committee treasurer and the claims in the Amended Complaint are sufficient to establish that there is no reason to doubt the claims relating to use of this information.[5]  In conducting this assessment of Kean Committee's need for the information, this Court has done far more than the Supreme Court did in Akins, where after asking the question, the Court conducted no further inquiry.  See Akins, 524 U.S. at 21.

    ii.     Applicability of Akins Beyond Voters

    The FEC's second argument against standing is that the FECA's disclosure requirements are only meant for voters so as to prevent corruption.  See Def. Reply at 11.  Hence, argues the FEC, only voters have standing to bring an action based on FECA's disclosure laws.  Id.  The authority cited by the FEC for this proposition is Akins, which found standing for voters challenging the FEC's action regarding FECA disclosure requirements.

    The FEC again misstates Akins.  The FEC argues that Akins establishes that FECA disclosures are meant only for voters.  Id. (citing Akins, 524 U.S. at 21 (the information "would help [voter plaintiffs] . . . evaluate candidates for public office")).  However, Akins does not lend

---

    [5] Mr. Kean came forth in plaintiff's supplemental brief with an affidavit stating his intention possibly to run for a United States Senate seat in 2006, but the Court has not utilized Mr. Kean's affidavit in reaching its conclusion on standing.

itself to such a narrow construction.  When discussing prudential standing, the Supreme Court

stated that "[w]e have found nothing in [FECA] that suggests Congress intended to exclude voters

from the benefits of these provisions, or otherwise restrict standing, say, to political committee,

candidates, or their committees."  Akins, 524 U.S. at 20 (emphasis added).  To be sure, the Court

was discussing prudential standing when it made this statement, as the FEC correctly observes.

But to the extent the FEC attempts to argue that the purpose of FECA disclosures does not extend

beyond voters, this language is highly relevant.  When considering what actors fall within the

"zone of interests to be protected" by FECA, the Supreme Court in Akins was adding voters to a

list that in its view already included "political committtee[s], candidates, [and] their committees."

Id.

        Beyond the language in Akins, it is plain that the ultimate goal of FECA was to eliminate

actual or perceived corruption within the political process.  See Buckley v. Valeo, 424 U.S. 1, 26

(1976) (primary purpose of FECA is to limit actual corruption and the appearance of corruption).

To further that goal, especially as to perceived corruption, the reporting requirements in FECA

create transparency in the political process by informing the political process of who is giving and

who is spending money.  See id. at 66-68 (the disclosure requirements in FECA further the goal of

preventing corruption by informing the electorate, deterring corruption, and permitting the

gathering of data so as to catch corruption).  There is nothing in the text of FECA limiting that

information to voters, nor would it seem to further the ends of FECA if voters were the only

political actors the information was intended to assist.  Surely Congress did not intend to exclude

political committees, candidates, and candidate committees from using information obtained as a

result of FECA disclosure requirements.  These actors serve a critical role in the political process

of accumulating and disseminating information to their supporters and to voters in general.

Hence, Akins is not limited to voters, and the relevant group intended to benefit from the FECA

disclosure requirements stretches beyond voters to include political committees, candidates, and

candidate committees.

       iii.    Role of Candidate Committees

      The FEC's third, and most powerful, argument against standing is that the Kean

Committee is an entity with a finite scope and duration, and therefore cannot suffer injury in the

future.  See Def. Mot. at 17-18; Def. Reply at 13-14.  The FEC asserts that,"[b]y law, the Kean

Committee only serves functions arising from a specific election cycle for a specific candidate ...."

Def. Mot. at 13.  The FEC further argues that the Kean Committee has a singular purpose, "to

manage the finances of a specific candidate's campaign for a specific federal office in a specific

election cycle."  Id., citing 2 U.S.C. §§  431(5), 431(6), 432(e)(1), 432(f); 11 C.F.R. §§ 101.1(a),

102.1(a).  Therefore, because of its limited purpose to support Mr. Kean in the 2000 election, the

Kean Committee cannot have an ongoing stake in the outcome of this case, and cannot establish a

future injury necessary to sustain Article III standing.  According to the FEC, the Kean Committee

is "moribund."  See Def. Mot. at 16.

      Although the FEC presents a strong argument, given the numerous activities of the

principal candidate committee the argument ultimately fails.  The FEC regulations pertaining to

candidate committees are extensive and illustrate that candidate committees are far from

"moribund" at the end of an election.  To create a candidate committee the treasurer of the

committee must file a Form 1 -- Statement of Organization --which is signed by the treasurer, and does not require any participation by the candidate.  <u>See</u> 11 C.F.R. § 102.1(a).  When a candidate committee spends and raises money, the regulations are clear that the money is raised and spent by the candidate committee, not the candidate.  <u>See</u>, <u>e.g.</u>, 2 U.S.C. § 432(e)(2) ("Any candidate ... who receives a contribution ... or makes a disbursement in connection with such campaign shall be considered, for purposes of this Act [FECA], as having received the contribution ... or as having made the disbursement, ... as an agent of an authorized committee.").

The candidate committee is also not limited to spending money only on its principal candidate.  Under FEC regulations, a candidate committee can spend its money to: defray the ordinary and necessary expenses of a federal officeholder; donate to charities; transfer funds to any national, state, or local political parties; and contribute money, up to $1,000 per election, to other federal candidates.  <u>See</u> 11 C.F.R. § 113.2.  Although the Kean Committee may not currently have any money to spend along these lines, these permissible spending rules highlight the unique role of the candidate committee.

The existence of a candidate committee continues after the election.  First, a candidate committee's reporting requirements do not end until the committee has been terminated.  <u>See</u> 11 C.F.R. §§ 102.3(b), 104.1(a).  Therefore, had Kean Committee failed to file a required report at any time over the last 4 years, the FEC could have brought an enforcement action against the Committee and its treasurer.  In such an event, it is doubtful the FEC would have been receptive to a defense that the Committee is moribund.

Second, a candidate committee may take a number of different steps after an election.  The

committee can do nothing but continue to file the required reports with the FEC, and then the

candidate can designate it for another campaign.  See 11 C.F.R. §§ 101.1, 102.1.  This remains an

option open to Kean Committee.  Alternatively, a candidate committee can convert itself into a

multi-candidate political committee.  See FEC Advisory Op. 2004-4 (permitting a candidate

committee to convert into a multiple-candidate political committee).  In order to accomplish this,

all that is needed is for the treasurer of the committee to file a Form 1M with the FEC -- action by

the candidate is not needed to make this conversion.  Again, Kean Committee could take this step.

Finally, a candidate committee can terminate, but first must either retire any debts it has by raising

money[6] or enter into debt settlement.  See  11 C.F.R. §§ 102.3, 116.1.  Both of these activities are

taken by the candidate committee and involve filing paperwork with the FEC.  As far as FEC

regulations are concerned, the candidate is not involved in either of these operations.  See FEC

Form 8 Debt Settlement Plan (filled out and signed by the treasurer of the committee, not the

candidate).

　　　　These numerous FEC regulations pertaining to the formation, pre-election activity, post-

election activity, and termination of a candidate committee indicate that the candidate committee

is far from moribund after the date of the election.  The Kean Committee, along with its treasurer,

who has filed an affidavit in this case, have independent legal obligations, and the Committee is

an independent legal entity from the candidate.  The Court concludes, therefore, that the Kean

---

[6]At the motion hearing held on November 10, 2004 and in its subsequent filings with the
Court, plaintiff stated that it has begun to raise money to retire its debt, and this information will
assist them in accomplishing this goal.  This additional information certainly highlights the
independent existence of the candidate committee from its candidate, but it was not necessary to
conclude that plaintiff had standing to bring this case.

Committee, separate and apart from Mr. Kean individually, remains a viable entity even after the specific election cycle, that it can suffer injury from denial of the information sought, and that it thus may sustain this action against the FEC.

      iv.    <u>Kean Committee Amended Complaint</u>

Finally, the FEC argues that plaintiff has not established standing as of the filing of its Amended Complaint, since the record before the Court is devoid of evidence to support Kean Committee's arguments for standing as of that time. <u>See</u> <u>Lujan</u>, 504 U.S. at 571 n. 4 ("The existence of federal jurisdiction ordinarily depends upon the facts <u>as they exist when the complaint is filed</u>.") (emphasis in original). The FEC argues that the Kean Committee has been doing nothing for the last three years and has been simply "waiting." <u>See</u> Tr. Mot. Hearing at 7, line 16. The FEC also points out that the retirement of debt activity now alleged by plaintiff was crafted by counsel at the motions hearing and that such post hoc rationalization highlights the lack of standing at the time Kean Committee filed its complaint.

It is ironic that the FEC would make the argument that Kean Committee has been silent for three years, when it is the FEC itself that has driven the timing of this case. It took the FEC three years simply to act on Kean Committee's administrative complaint originally filed in May of 2000. <u>See</u> Am. Compl. ¶¶ 1-6. Moreover, the FEC's argument fails to grasp the nature of this Court's standing inquiry. The FEC points to the lack of activity as evidence that Kean Committee has not suffered an injury-in-fact. <u>See</u> Def. Supp. at 4-5. But that is not the appropriate analysis. Instead, the activity of Kean Committee goes to whether it can use the information requested, to which it allegedly has a right by statute. Far from a searching inquiry, the "no reason to doubt" assessment

does not require extensive evidence.  Indeed, plaintiff's pursuit of this suit, coupled with its

silence, actually supports the proffered justification.  Within its Amended Complaint, Kean

Committee has argued that it needs the information to assess the scope of CRG's political clout as

well as any future ramifications that may have for Kean Committee.  See Am. Compl. ¶¶ 21-22.

By filing its required reports, and not terminating, Kean Committee has shown that it is waiting

for this information through the outcome of this action before deciding its next step.  It is not for

this Court to conduct any further inquiry into the political realities of such a future beyond noting

the proffered justification in the Amended Complaint and FEC's failure to provide a persuasive

reason to doubt Kean Committee's assertions.  See Becker, 230 F.3d  at 387 ("To probe any

further into these situations [politician's strategies] would require the clairvoyance of campaign

consultants or political pundits -- guises that members of the apolitical branch should be

especially hesitant to assume.").

## CONCLUSION

For the foregoing reasons, the FEC's motion to dismiss or, in the alternative, for summary

judgment is denied.  Kean Committee has established its standing to pursue this action.  A

separate order accompanies this memorandum opinion.


_____/s/ John D. Bates_____
JOHN D. BATES
United States District Judge


Dated:  January 25, 2005_____

-25-

Copies to:

Kimberly Nelson Brown
Caplin & Drysdale, Chartered
One Thomas Circle, Northwest
Suite 1100
Washington, D.C.  20005
202-862-5046  (telephone)
202-429-3301  (fax)
E-mail:  knb@capdale.com

Kirk L. Jowers
Caplin & Drysdale, Chartered
One Thomas Circle, Northwest
Suite 1100
Washington, D.C.  20005
202-862-5057  (telephone)
202-429-3301  (fax)
E-mail:  klj@capdale.com

David Brett Kolker
Federal Election Commission
999 E Street, Northwest
Washington, D.C.  20463
202-694-1650  (telephone)
202-219-0260  (fac)
E-mail:  dkolker@fec.gov

Vivien Clair
Federal Election Commission
999 E Street, Northwest
Washington, D.C.  20463
202-694-1650  (telephone)
202-219-0260  (fac)
E-mail:  vclair@fec.gov