**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KEAN FOR CONGRESS COMMITTEE,

Plaintiff,

v.

FEDERAL ELECTION COMMISSION,

Defendant.

Civil Action No.  04-0007 (JDB)

**MEMORANDUM OPINION**

Plaintiff Kean for Congress Committee ("the Committee") brought this action against

defendant Federal Election Commission ("FEC") under the Federal Election Campaign Act

("FECA"), 2 U.S.C. § 437(g)(a)(8).  Presently before the Court is plaintiff's motion for attorney's

fees and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A).

For the reasons discussed below, the Court will grant plaintiff's motion in part.

**BACKGROUND**

The specifics of the underlying litigation are detailed in this Court's Memorandum

Opinion of January 25, 2005.  See Kean for Congress Comm. v. FEC, Civil Action No. 04-0007

(D.D.C. Jan. 25, 2005) (memorandum opinion) (denying FEC's motion to dismiss or, in the

alternative, for summary judgment based on plaintiff's alleged lack of standing).  They need not

be repeated here.  Following the Court's opinion, the FEC voluntarily requested a remand to

reconsider its prior disposition of plaintiff's administrative complaint.  See Def.'s Mot. Remand.

The remand request was purportedly based on what FEC described as "an intervening change in

-1-

the law."  Specifically, FEC stated that a Supreme Court case, McConnell v. FEC, 540 U.S. 93

(2003), was directly pertinent to the resolution of plaintiff's administrative complaint and had

been decided after the FEC's decision-making process at the administrative level concluded.

Plaintiff, however, opposed the remand request, arguing that FEC had already wasted too much

time and claiming that McConnell was available to the FEC commissioners when they issued

their Statement of Reasons -- in fact, the commissioners acknowledged McConnell, but chose not

to apply it.  See Pl.'s Mem. Opp'n to Def.'s Mot. Remand at 1-2.

    The Court granted FEC's motion, expressly limiting the remand proceedings to a period

of sixty (60) days.  Kean for Congress Comm. v. FEC, Civil Action No. 04-0007 at 3 (D.D.C.

Feb. 15, 2005) (remand order).  The order further restricted the substantive scope of the remand

to the effect of McConnell upon plaintiff's administrative complaint.  Id. at 3.  The Court

expressly noted that McConnell is not properly characterized as an "intervening change in the

law," however, because the decision pre-dated the FEC's Statement of Reasons.  Id. at 2.  Since

the remand, the Court has required the FEC to file several status reports to update the Court on

the progress of its proceedings and any ensuing investigations.  Ultimately, the remand

proceedings resulted in a reversal of FEC's original disposition of plaintiff's administrative

complaint.  See Def.'s Suppl. Mem. Addressing Ct.'s Post-Remand Juris. at 1.  Plaintiff, as a

result of the remand proceedings and the FEC's related investigations, has essentially received

everything it initially sought to obtain through judicial action.  See id. at 3.

    On May 31, 2005, plaintiff's counsel filed a motion for attorney's fees and expenses,

arguing that plaintiff is a "prevailing party" under the EAJA and the Supreme Court's decision in

Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Resources, 532 U.S. 598

(2001), by virtue of the Court's remand order.  FEC vigorously opposes the motion, arguing that

the remand order was issued at FEC's request, over plaintiff's opposition, and that any change in

its behavior was brought about voluntarily and not as the result of a court-ordered alteration in

the legal relationship between the parties.  Moreover, even if the remand order constitutes a

judicially-imposed change in the legal relationship between the parties, FEC submits that

plaintiff is still not entitled to an attorney's fees award because the FEC's prior position was

"substantially justified" under the EAJA and, furthermore, because plaintiff has failed to provide

adequate documentation that the attorneys' fees sought are reasonable.

### ANALYSIS

The EAJA provides, in relevant part, that:

> a court shall award to a prevailing party other than the United
> States fees and other expenses . . . incurred by that party in any
> civil action, brought by or against the United States in any court
> having jurisdiction of that action, unless the court finds that the
> position of the United States was substantially justified or that
> special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

In order to be considered a "prevailing party" within the meaning of the statute, plaintiff

must establish that:  (1) there has been a court-ordered change in the legal relationship between

the parties; (2) judgment was entered in plaintiff's favor; and (3) the judicial pronouncement

confers some judicial relief upon plaintiff.  See Thomas v. Nat'l Sci. Found., 330 F.3d 486, 492-

93 (D.C. Cir. 2003); see also Select Milk Producers, Inc. v. Johanns, 400 F.3d 939, 945 (D.C.

Cir. 2005).  If plaintiff qualifies as a "prevailing party," the Court must then consider whether the

FEC's position was "substantially justified" and, if it was not, whether the fees and expenses

sought are reasonable.

## I.  Whether the Remand Order Conferred "Prevailing Party" Status Upon Plaintiff

Plaintiff satisfies the elements of the "prevailing party" inquiry.  To begin with, the

Court's remand order caused a change in the legal relationship between the parties because it

required FEC to do something it otherwise would not have been under an obligation to do --

reconsider the plaintiff's administrative complaint in light of McConnell within 60 days of the

Court's order.  See Role Models of Am. v. Brownlee, 353 F.3d 962, 965, 966 (D.C. Cir. 2004)

(finding that "a change in someone's primary conduct in the real world . . . [such as by the]

imposition of a restriction on others" is sufficient to confer prevailing party status) (citing

Waterman Steamship Corp. v. Maritime Subsidy Bd., 901 F.2d 1119, 1122 (D.C. Cir. 1990)); see

also Edmonds v. FBI, 417 F.3d 1319, 1322-23 (D.C. Cir. 2004).  Although a voluntary change in

a defendant's conduct is not sufficient under Buckhannon to confer prevailing party status upon

the plaintiff, see 532 U.S. at 605, the instant case involves no such voluntary change.  Certainly,

FEC was under no obligation to request a remand order so that it could reconsider plaintiff's

administrative complaint, and FEC did suggest that the remand proceedings would be complete

within sixty days.  See Def.'s Mem. Supp. Mot. Remand at 6.  But the Court's order makes clear

that the sixty-day limit is a court-imposed obligation, adopted because of the Court's concern

over the amount of time that plaintiff's administrative complaint had already languished before

the FEC.  The sixty-day limit functioned to prevent the FEC from extending the proceedings past

April 15, 2005 and to affirmatively require the FEC to complete those proceedings before that

date.  It matters not that the FEC suggested that sixty days would be sufficient.

Moreover, the remand order limited the substantive scope of the FEC's proceedings, and

required the parties to appear for a Status Conference following the remand.  The Court's

continued involvement evidences that the Court retained jurisdiction over the case and acted as a

monitoring authority over the FEC's disposition of plaintiff's administrative complaint.  At the

moment the Court entered its order containing instructions and limitations, the FEC's otherwise

voluntary request for a remand became a judicially-imposed change in the legal relationship

between the parties.  See Edmonds, 417 F.3d at 1322-23.  The circumstances surrounding the

remand are more akin to a court-sanctioned consent decree than they are to a private settlement

agreement.  See Buckhannon, 532 U.S. at 604; cf. Teva Pharms. USA, Inc. v. FDA, Civil Action

No. 05-1469 (D.D.C. Oct. 21, 2005) (memorandum opinion) (distinguishing court-sanctioned

consent decrees from private settlement agreements and noting that the latter lack sufficient

judicial imprimatur to be considered court decisions).  The Court's order contains sufficient

judicial imprimatur because, once entered, the FEC was not free to ignore the restrictions or

instructions attached to the remand.  See Edmonds, 417 F.3d at 1322-23.  Beyond all this, the

Court's conclusion is consistent with the premise that a remand predicated upon administrative

error -- as this one was -- confers prevailing party status upon the plaintiff.  See Lynom v.

Widnoll, 222 F. Supp. 2d 1, 4-5 (D.D.C. 2005).

        The Court also finds that the remand constitutes a judgment in plaintiff's favor.  Although

plaintiff opposed the motion for remand, it did so because it feared that FEC would use the

remand simply as an opportunity to rewrite its Statement of Reasons, and to further extend the

already-extraordinary length of time that plaintiff's complaint had been pending before the FEC.

See Pl.'s Mem. Opp'n Def.'s Mot. Remand at 1-2.  The restrictions and limitations imposed by the

remand order reflect the Court's intent to prevent these feared occurrences from taking place --

technically, then, plaintiff's arguments on these points were successful.  The remand order also

constitutes judicial relief, because if the case had not been remanded and plaintiff ultimately

prevailed before the Court, the remedy would have included a remand to the FEC -- in the

administrative law context, the routine remedy is a remand to the agency.  The remand order

hence provided plaintiff with a substantial portion of the relief originally sought in this action.

See Lake Pilots Ass'n v. United States Coast Guard, 310 F. Supp. 2d 333, 336 (D.D.C. 2004); cf.

Tex. State Teachers Ass'n v. Garland Indep. School Dist., 489 U.S. 782, 792 (1989) (stating that

"purely technical" or "de minimus" victories are insufficient to justify a fee award).  In fact, the

remand order ultimately afforded plaintiff the opportunity to obtain a favorable judgment before

the FEC.  See Role Models, 353 F. 3d at 966.  This is arguably the exact relief that plaintiff

sought to obtain through judicial action.  See Lake Pilots, 310 F. Supp. 2d at 337; see also Role

Models, 353 F. 3d at 966.  "Because of this Court's order, the [d]efendant was required to

consider [p]laintiff's application and therefore, contrary to [plaintiff's] position before filing this

lawsuit, [plaintiff] had the opportunity to prevail before the [FEC]."  Gentry v. Roche, 2005 WL

3274065 at *1 (D.D.C. Aug. 31, 2005) (unpublished disposition).  In short, plaintiff's judicial

complaint, and this Court's orders, directly precipitated both the remand to the FEC and the

ultimate relief afforded to plaintiff by the FEC administratively.  It would blink reality to

conclude otherwise.

The fact that the Court did not attach a vacatur of the agency's prior decision to the

remand is of no consequence.  The remand in this case constitutes relief that is "concrete,"

"irreversible," and incapable of being diminished through later proceedings.  See Select Milk

Producers, 400 F.3d at 947.  The remand can never be undone, in part because the agency

reversed its prior determination as a result of the remand.  "It does not matter that this case

became moot after the court-ordered change in the parties' relationship."  Id. at 948 (citing

Thomas, 330 F.3d at 493).  Plaintiff has thus satisfied the three elements of the "prevailing party"

inquiry.

## II.  Whether the FEC's Position was "Substantially Justified"

Having concluded that plaintiff is a prevailing party under the EAJA, the question then

becomes whether the FEC's position was "substantially justified."  If so, then plaintiff is not

entitled to an award of attorney's fees under § 2412(d)(1)(A).  The government bears the burden

of convincing the Court that its position was '"justified in substance or in the main -- that is,

justified to a degree that could satisfy a reasonable person.  That is no different from . . . [having]

a reasonable basis in both law and fact.'"  F.J. Vollmer Co., Inc. v. Magaw, 102 F.3d 591, 595

(D.C. Cir. 1996) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988); Lundin v. Mecham,

980 F.2d 1450, 1459 (D.C. Cir. 1992)).  The Court may properly consider "the agency's action

and the arguments defending that action in court."  F.J. Vollmer, 102 F.3d at 594.

Contrary to FEC's assertions, the Court need not engage in "secondary litigation" to

determine whether these standards are met in the instant case; it is quite clear that they are not.

From start to finish, the handling of plaintiff's administrative complaint and the FEC's conduct

during the pendency of this action have been quite peculiar.  To begin with, the FEC failed to

timely consider plaintiff's complaint at the administrative level, the commissioners initially failed

to issue a Statement of Reasons in support of their conclusion, and the commissioners further

failed to apply existing and controlling Supreme Court precedent to the facts of plaintiff's case.

The Statement of Reasons issued by the FEC before the remand post-dates and acknowledges

McConnell, ultimately refusing to apply it to the facts of the case. This is particularly perplexing in light of the fact that the FEC's remand request was explicitly grounded on the direct pertinence of McConnell to the proper resolution of plaintiff's administrative complaint.

Not only did the agency itself beg the Court for the opportunity to reconsider its prior decision, but it did so based upon its own recognition that the prior decision was probably not consistent with controlling law -- controlling law that existed and was acknowledged, but ultimately ignored, by the commissioners when the agency rendered its Statement of Reasons.[1] Furthermore, the agency ultimately reversed its position based on McConnell, and by the FEC's own admission, plaintiff has received essentially everything that it sought to obtain as a result of that reversal. The FEC's inconsistent and misleading representations as to the "intervening" nature of McConnell, and its significance to the issues at hand, simply cannot be deemed "substantially justified." The crux of the "substantial justification" inquiry is the reasonableness of the government's position. See Role Models, 353 F.3d at 967. FEC's actions throughout this case have fallen short of reasonable. In sum, there is nothing for the Court to point to in support of a finding that the FEC's position was justified, much less substantially so. Accordingly, plaintiff is not barred from recovering attorney's fees and expenses.

## III. Whether the Amount of Plaintiff's Fee Request is Reasonable

Plaintiff seeks a total of $31, 581.17 in attorney's fees and expenses. The usual method for calculating a reasonable fee award is "the number of hours reasonably expended multiplied by a reasonable hourly rate." Murray v. Weinberger, 741 F.2d 1423, 1427 (D.C. Cir. 1984). The

---

[1]It is worth noting that the FEC only "voluntarily" requested a remand to reconsider its decision after the Court denied its dispositive motion and held that plaintiff had standing to pursue this litigation.

EAJA caps the maximum hourly rate for attorneys at $125, absent a showing of special circumstances.  See Role Models, 353 F.3d at 968.  Although this case involved the work of eight attorneys and three paralegals, see Pl.'s Mem. Supp. Mot. Atty's Fees at 11, plaintiff seeks compensation for the work of only two attorneys -- Ms. Kimberly N. Brown, who acted as lead counsel, and Mr. J. Gerald Hebert.  Ms. Brown and Mr. Hebert do not seek compensation for all of the time they billed during this litigation, and they do not seek an enlargement of the statutory maximum hourly rate.  Both Ms. Brown and Mr. Hebert are highly experienced legal professionals, and usually collect hourly rates of $385-$405 or $250, respectively.  See id.; see also Decl. of Kimberly N. Brown; Decl. of J. Gerald Hebert.  The memoranda and declarations submitted in support of the motion for attorney's fees include certain logs and charts regarding the amount of time expended, the resources utilized and services incurred, and, as to Mr. Hebert, the tasks performed.  Based upon this documentation and the circumstances of the case, the Court finds that, at this juncture, an award of $17,343.67 is reasonable.

Plaintiff is entitled to the full amount sought in compensation for the services of Mr. Hebert.  The log that details Mr. Hebert's efforts is sufficiently detailed to provide the Court with the degree of certainty required in order to determine that the fee request is reasonable.  Mr. Hebert's log chronicles all of the 75.8 hours for which he seeks compensation, detailing his efforts in ten-minute increments and listing tasks performed by date.  See Decl. of J. Gerald Hebert, Att. B at 1-4.  Based upon this documentation, the Court can conceive of no reason to suspect double-billing, redundant or superfluous efforts, or other inaccuracies.  The judicial proceedings in this case involved substantial briefing and numerous court appearances, in addition to the negotiations that took place between the parties outside of the Court's view.

Hence, plaintiff is entitled to compensation for all 75.8 hours billed by Mr. Hebert, amounting to a total of $9,745.00.

Plaintiff also seeks compensation for 113.9 hours of legal services billed by Ms. Brown. See Pl.'s Mem. Supp. Mot. Atty's Fees at 14.  With respect to Ms. Brown's efforts, however, plaintiff has provided insufficient information as to how the hours were spent.  See id.; see also Decl. of Kimberly N. Brown.  Plaintiff has not told the Court what Ms. Brown did during the 113.9 hours she spent on this case.  Although the Court does not doubt that the time was productively spent, the Court does not know what tasks Ms. Brown performed or when she performed them -- all the Court knows is that Ms. Brown seeks compensation for 113.9 hours of her work as lead counsel for plaintiff.  This is insufficient to enable the Court to say "with a high degree of certainty . . . that [Ms. Brown's] billings are reasonable."  See Role Models, 353 F.3d at 970.  The Court cannot award compensation for Ms. Brown's efforts in the face of such a deficiency.  Id. at 970-71.  Thus, plaintiff's fee award will be reduced by $14,237.50 (the amount of Ms. Brown's services) unless plaintiff provides the Court with adequate documentation of the reasonableness of Ms. Brown's billings by not later than January 20, 2006.

Plaintiff also seeks reimbursement for $7,868.67 of expenses incurred in connection with this litigation, inclusive of costs associated with legal database research, photocopying, long-distance phone charges, and the like.  To this end, plaintiff has submitted a chart that lists the categories of expenses and their corresponding costs.  See Pl.'s Mem. Supp. Mot. Atty's Fees at 14.  The chart lists one category of expenses -- "taxi fees" -- that are non-compensable.  See Role Models, 353 F.3d at 974 (holding that ground transportation is non-compensable under the fee-shifting provision of the EAJA); see also Mass. Fair Share v. Law Enforcement Assistance

Admin., 776 F.2d 1066, 1069 (D.C. Cir. 1985) (per curiam).  Accordingly, plaintiff's fee award

will be reduced by $6.00, the listed price for the taxi fare.  Plaintiff also seeks compensation for

$12.38 worth of "outside courier" services.  The Court will allow plaintiff to recover the cost of

the "outside courier," viewing it as a "document delivery service" rather than a "messenger

service."  See Role Models, 353 F.3d at 974-75.  Hence, plaintiff may recover a total of

$7,862.67 for reasonable expenses.

## CONCLUSION

For the foregoing reasons, the Court will grant plaintiff's motion for attorney's fees and

costs under the EAJA in part.  Plaintiff is hereby awarded $17,343.67 as reasonable attorney's

fees and expenses under that fee-shifting provision.  Plaintiff is given seven days from the date of

this Memorandum Opinion to provide adequate documentation as to the efforts of Ms. Brown.  A

separate order has been posted on this date.


                                                    /s     John D. Bates
                                                        JOHN D. BATES
                                                  United States District Judge



Dated:     January 13, 2006



Copies to:

Kimberly N. Brown
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, NW
Suite 1100
Washington, DC 20005
(202) 862-5046

Fax: (202) 429-3301
Email: knb@capdale.com

Donald Jay Simon
SONOSKY, CHAMBERS, SACHSE, ENDRESON & PERRY
1425 K Street, NW
Suite 600
Washington, DC 20005
(202) 682-0240
Fax: (202) 682-0249
Email: dsimon@sonosky.com

J. Gerald Hebert
5019 Waple Lane
Alexandria, VA 22304
(703) 567-5873
Fax: (703) 567-5876
Email: JGHEBERT@COMCAST.NET

Kirk L. Jowers
CAPLIN & DRYSDALE
One Thomas Circle, NW
Suite 1100
Washington, DC 20005
(202) 862-5057
Fax: (202) 429-3301
Email: klj@capdale.com

Trevor Potter
CAPLIN & DRYSDALE
1 Thomas Circle, N.W.
Washington, DC 20005
(202) 862-5092
Fax: (202) 429-3301
Email: tp@capdale.com
        *Counsel for plaintiff*

Gregory John Mueller
FEDERAL ELECTION COMMISSION
999 E Street, NW
Washington, DC 20463
(202) 694-1650
Fax: (202) 219-0260

Email: gmueller@fec.gov

David Brett Kolker
FEDERAL ELECTION COMMISSION
Litigation Division
999 E Street, NW
Washington, DC 20463-0002
(202) 694-1650
Fax: (202) 219-0260
Email: dkolker@fec.gov

Vivien Clair
FEDERAL ELECTION COMMISSION
999 E Street, NW
Washington, DC 20463
(202) 694-1650
Fax: (202) 219-0260
Email: vclair@fec.gov

> *Counsel for defendant*